IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


|                                          |     |           |
|------------------------------------------|-----|-----------|
|                                          | )   |           |
| TIETEX INTERIORS,                        | )   |           |
|                                          | )   |           |
|     Plaintiff,       | )   |           |
|                                          | )   |           |
|     v.               | )   | 1:06CV503 |
|                                          | )   |           |
| AMERICAN FURNITURE                       | )   |           |
| MANUFACTURING, INC.,                     | )   |           |
| AMERICAN DECORATIVE FABRICS,             | )   |           |
| LLC, SHANGHAI ORIENT WEST                | )   |           |
| DECORATIVE FABRICS CO, LTD,              | )   |           |
| and HOME FURNISHING                      | )   |           |
| INTERNATIONAL, LLC,                      | )   |           |
|                                          | )   |           |
|     Defendants.      | )   |           |


<u>MEMORANDUM OPINION and ORDER</u>


OSTEEN, JR., District Judge


    Plaintiff Tietex Interiors ("Tietex") filed an action

against Defendant American Furniture Manufacturing, Inc. ("AFM")

in June 2006, for violations of the Copyright Act, the Lanham

Act, common law trademark infringement, and North Carolina's

Unfair and Deceptive Trade Practices Act.  In its initial

complaint, Plaintiff alleged that AFM infringed upon its

copyright by using unauthorized copies of Plaintiff's "Clarissa"

patterned fabric.  Plaintiff amended its complaint in January

2007, adding Defendants American Decorative Fabrics, LLC ("ADF")

and Home Furnishings International, LLC ("HFI"), (collectively,

"Amended Defendants").[1]  HFI is the parent company to ADF.[2]  In its amended complaint, Plaintiff alleges that ADF sold unauthorized copies of the Clarissa pattern to AFM.[3]  Plaintiff also alleges that HFI directed, authorized, and controlled the sale of unauthorized copies of the Clarissa-patterned fabric to AFM.

Plaintiff contends that ADF and HFI received service of the amended complaint on March 26, 2007.  After ADF and HFI failed to respond to the amended complaint, Plaintiff filed a motion for an entry of default on May 9, 2007.  The court granted the motion the following day.  In response, ADF and HFI filed a motion to set aside the entry of default on May 21, 2007.  Now before this court is ADF's and HFI's motion to set aside the court's entry of default and their motion to dismiss for lack of personal jurisdiction and improper venue.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff designs and manufactures fabrics, and sells its wares to furniture upholsterers.  At the center of debate in this

---

[1] Plaintiff also added Shanghai Orient West Decorative Fabrics Co, Ltd as a party in the amended complaint.  Shanghai is currently in default and is not relevant to the issues addressed here.

[2] Plaintiff states that HFI controls ADF because one of HFI's managers, David Li, is chief executive officer of ADF.

[3] Plaintiff claims that if ADF did not directly sell the copyrighted material to AFM, then an entity under ADF's control did so.

2

case is Plaintiff's Clarissa fabric pattern, a design for which Plaintiff acquired both an assignment and the right to reproduce the pattern in 2002.

Plaintiff supplied the Clarissa-patterned fabric to AFM, and AFM used the fabric to produce upholstered furniture. Plaintiff later discovered that AFM had obtained unauthorized copies of the Clarissa-patterned fabric and was using it to upholster furniture. Plaintiff traced the sale of the unauthorized copies of the fabric to either ADF, HFI, or an entity under common control of those companies.

After discovering this information, Plaintiff filed a complaint against AFM. AFM submitted an answer denying Plaintiff's allegations and asserted defenses, which include, inter alia, that Plaintiff does not own the copyrights at issue, that Plaintiff does not have valid copyright registrations for the fabric pattern, and that the copyrighted pattern lacks originality. Following discovery, Plaintiff amended its complaint by adding ADF and HFI as defendants. Plaintiff attempted to perfect service of the amended complaint by delivering it to David Li, president of ADF and HFI, through a process server.

ADF and HFI share an office at 295 Fifth Avenue, Suite 812, New York. Plaintiff's process server, Steven Mitchell, attempted to serve ADF and HFI through Mr. Li at the Fifth Avenue address

3

on two separate occasions.  When Mr. Mitchell arrived at ADF's and HFI's office the first time, he was informed by Tom Goldstein, an employee of ADF and HFI, that Mr. Li was unavailable.[4]  Mr. Mitchell returned to the office of ADF and HFI a second time to serve Mr. Li.  Once again, Mr. Li was unavailable, and Mr. Mitchell served the amended complaint on Mr. Goldstein.[5]  Messrs. Mitchell and Goldstein both presented affidavits that consistently evidence the fact that Mr. Goldstein offered to accept service of process.  (Pl.'s Resp. Mot. Set Aside Entry Default Ex. B ("Tom Goldstein offered to accept service . . . ."); Aff. Thomas Goldstein Supp. Mot. Set Aside Entry Default ("I indicated that if he was determined to leave the documents there, then I would take them, although I had told him previously that he needed to give the documents to Mr. Li . . . .").))

Neither ADF nor HFI filed an answer or responsive pleading to the amended complaint before the April 16, 2007, deadline.

---

[4] There are differing accounts as to Mr. Li's whereabouts. The process server submitted an affidavit stating that he was told Mr. Li was not in the office on Mondays and Tuesdays. Defendants ADF and HFI claim that Mr. Li was unavailable because he was in China at the time.  At a subsequent hearing, Mr. Li advised this court he was in High Point, North Carolina.

[5] There are inconsistent representations by HFI as to Mr. Goldstein's position with the company that are addressed later in this opinion.  Mr. Goldstein states that he is an employee of ADF and HFI and the controller for both companies.  (Thomas Goldstein Aff. ¶ 1.)

4

Accordingly, Plaintiff moved for an entry of default against both ADF and HFI on May 9, 2007.  Default was entered May 10, 2007.

Five days after the court entered default against ADF and HFI, an attorney representing the two companies contacted Plaintiff.  On May 21, 2007, ADF and HFI filed a motion to set aside entry of default.  Both ADF and HFI now seek to set aside the entry of default on the basis that the service of process was deficient because Mr. Goldstein was not an "agent" of either company.

ADF's corporate structure is as follows.  Both companies share the same office in New York.  David Li is the CEO of ADF and a manager of HFI.  Mr. Li contends that he owns all of ADF and a portion of HFI.[6]  Mr. Li is a member of HFI and manages the business.  David Li's true name is Zhenzhong Li, but he is also known as David Li.

The court has experienced difficulty in ascertaining Amended Defendants' corporate structure and business operations because they have submitted a number of inconsistent documents.  The inconsistencies are primarily found in the affidavits of Tom Goldstein, John Cobb, Harvey Poe, and the two affidavits of David Li.

---

[6] It is possible that HFI owns all of ADF.  Compare the statements of David Li (Pl.'s Opp'n Defs.' Mot. Dismiss . . . Change Venue Ex. B [Li Dep. Doc. No. 64-2]) with representations of David Li and Harvey Poe at the December 21, 2007, hearing.

Mr. Goldstein's affidavit alleges that he is an employee of and the controller for both ADF and HFI.  Harvey Poe, an attorney and the registered agent for HFI, executed an affidavit alleging that Mr. Goldstein is not an employee of HFI.  David Li's affidavit failed to address Mr. Goldstein's position with HFI.  Based on the most credible facts before the court, this court finds that Mr. Goldstein is both an employee of and the controller of ADF and HFI.

Another inconsistency is found in John Cobb's affidavit.  Mr. Cobb states that ADF never owned or leased property in North Carolina.  However, Plaintiff presented deposition testimony wherein Mr. Li stated that ADF did in fact have at least one warehouse in North Carolina between 2000 and 2003.

The court also notes that Mr. Li uses two names, Zhenzhong Li and David Li.  In this case, however, Mr. Li executed an affidavit as "David Lee."  While "Lee" has a variety of spellings and in this action could be a misspelling, the court is concerned about the intent of Mr. Li, especially considering inconsistencies in the affidavits.

In addition to these inconsistencies, Amended Defendants' affidavits omit information critical to this court's analysis.  For instance, Mr. Mitchell's affidavit states that Mr. Goldstein advised him that Mr. Li was not present and was in the office only on Mondays and Tuesdays for a short period of time.  Mr.

6

Goldstein's affidavit, however, states that he informed the process server that Mr. Li was out of the country. Curiously, Mr. Li's affidavit states that he was out of the country only on March 26, 2007, but never indicates when he left or when he returned. During the course of a hearing on these affidavits, Mr. Li informed the court that he was not out of the country on March 26, 2007, but in High Point, North Carolina.

## II. ANALYSIS

ADF and HFI claim there are two grounds on which the court may set aside the entry of default. The first ground alleged by ADF and HFI is that service of process was defective.

### A. Service of Process

ADF and HFI contest the sufficiency of process stating that Plaintiff did not properly serve ADF or HFI (or an agent of ADF or HFI). Rule 4 of the Federal Rules of Civil Procedure establishes the means by which courts will consider the service of process to be valid. This rule provides two methods for serving process upon corporations within a judicial district of the United States. Service will be effective either: (1) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . ." or (2) "pursuant to the law of the state in which the district court is located, or in which service is effected, for

7

the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Fed. R. Civ. P. 4(e)(1) and (h)(1). Rule 4 of North Carolina's Rules of Civil Procedure states that a corporation may be served by "delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office." N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(a).[7]

In this case, Plaintiff twice attempted to serve process upon Mr. Li. After these attempts to serve Mr. Li failed, Plaintiff served process upon Mr. Goldstein, the "controller" of ADF and HFI. ADF and HFI contend that delivery to Mr. Goldstein is improper because Mr. Goldstein is not an agent of either company. The issue now before the court is whether Mr. Goldstein can be considered an agent of ADF and HFI for the purpose of receiving process. The "burden of proving the required agency in the person served . . . is upon the plaintiff." Dominquez v. Nat'l Airlines, Inc., 42 F.R.D. 35, 37 (S.D.N.Y. 1966) (citation omitted).

Though Rule 4 of the Federal Rules of Civil Procedure and Rule 4 of North Carolina's Rules of Civil Procedure appear to be

---

[7] This statute is also referred to as North Carolina's Rules of Civil Procedure Rule 4(j)(6)(a).

"virtually identical for all practical purposes," <u>McCreary v.</u>
<u>Vaughan-Bassett Furniture Co.</u>, 412 F. Supp. 2d 535, 538 (M.D.N.C.
2005), there is an important distinction regarding proper service
of process.  The federal rule states that process may be
delivered to an officer or agent, while North Carolina's rule
"does not require that the person upon whom summons is served be
in fact in charge of the office of the officer, director or
managing agent of the corporation, merely that the person be
'apparently in charge.'"  <u>Williams v. Burroughs Wellcome Co.</u>, 46
N.C. App. 459, 463, 265 S.E.2d 633, 636 (1980).  Because the
federal rules allow a party to perfect service of process under
North Carolina law, the court will analyze the validity of
service under the broader state standard.  Under the standards
described hereinafter, this court holds that Mr. Goldstein was
and is both a managing agent of ADF and HFI and the person
"apparently in charge" of the offices of Mr. Li, ADF, and HFI on
the date process was served by Tietex.

North Carolina courts have stated that a corporate agent is
"one who stands in the shoes of the corporation in relation to
the particular matters committed to his care . . . [,] derives
authority from his principal to act in a representative capacity
. . . [,] and . . . represent[s] the corporation in its business
in either a general or limited capacity." <u>Carolina Paper Co. v.</u>
<u>Bouchelle</u>, 285 N.C. 56, 62, 230 S.E.2d 1, 5 (1974) (citing

9

<u>Service Co. v. Bank</u>, 218 N.C. 533, 11 S.E.2d 556 (1940)). In
defining the term "agent," courts focus their inquiry on whether
the employee in question has "some charge or measure of control
over the business entrusted to him, or of some feature of it, and
[is] of sufficient character and rank as to afford reasonable
assurance that he will communicate to his company the fact that
process has been served upon him." <u>Id.</u> at 61, 230 S.E.2d at 4-5
(citing <u>Whitehurst v. Kerr</u>, 153 N.C. 76, 68 S.E. 913 (1910)); <u>see
also</u> <u>Witcher, T/A v. Mac Tools, Inc.</u>, 62 F.R.D. 708, 710
(M.D.N.C. 1974) (An agent would be "invested with powers of
discretion and must exercise judgment in his duties," giving him
the "power to bind the company or permit him to make business
judgments.") (citation omitted). Though this inquiry is fact
specific, a determination of agency ultimately hinges on concepts
of fairness and becomes "merely a question whether the power to
receive service of process can reasonably and fairly be implied
from the character of the agency in question." <u>Carolina Paper
Co.</u>, 285 N.C. at 62, 230 S.E.2d at 5 (citation omitted).

    The facts before this court show that process was served
upon Mr. Goldstein at the office of ADF and HFI. Mr. Goldstein
identified himself as the controller of both ADF and HFI. Though
there is little evidence as to Mr. Goldstein's specific, day-to-
day job description, he represented himself to be in charge of
ADF's and HFI's office while the president, Mr. Li, was out of

town.  ADF and HFI dispute Plaintiff's account, claiming that Mr. Goldstein was not an agent of ADF or HFI and did not represent himself to be such an agent.  In support of this contention, ADF and HFI submitted affidavits of Mr. Poe, Mr. Li, and Mr. Goldstein.

Each affidavit gives a conflicting report as to Mr. Goldstein's status.  Mr. Poe claims that Mr. Goldstein is neither an agent nor an employee of HFI.[8]  Mr. Goldstein claims that he is an employee and the controller of both ADF and HFI.[9]  Mr. Li claims that Mr. Goldstein is an employee of ADF, but was not the office manager at the time process was delivered.[10]  None of the affidavits actually detail Mr. Goldstein's job duties or explain his proper title.  Instead, they create a vague and misleading description of Mr. Goldstein's occupation.

The only corroborated evidence of Mr. Goldstein's position is found in the affidavits of Mr. Mitchell and Mr. Goldstein.  According to Mr. Mitchell, Mr. Goldstein identified himself as the "controller" for ADF and HFI.  Mr. Goldstein identifies

---

[8] The court notes that Mr. Poe identified himself only as the registered agent for HFI and did not provide any details as to his official position with the company.  Being only a "registered agent," Mr. Poe would not have sufficient knowledge of HFI's operations to know whether or not Mr. Goldstein was employed by HFI.

[9] See Thomas Goldstein Aff. ¶ 1.

[10] Mr. Li does not state who the office manager was, just that the office manager was not Tom Goldstein.

11

himself as an employee and the controller of both companies as well. Mr. Goldstein's and Mr. Mitchell's affidavits are also consistent on one other point: that Mr. Goldstein offered to accept service or agreed to allow Mr. Mitchell to give him the documents. This court finds that Mr. Goldstein is the controller and a managing agent for ADF and HFI. This court further finds that Mr. Goldstein was apparently in charge of the office of Mr. Li, ADF, and HFI while Mr. Li was out of the office. These findings are further corroborated by the following facts.

First, in response to Amended Defendants' affidavits, Plaintiff submitted a licensing contract between Shanghai and ADF that outlines Mr. Goldstein's responsibilities with ADF. The licensing agreement gives ADF exclusive rights to Shanghai's fabric designs in exchange for monetary consideration. The agreement is signed by Shanghai through its general manager, Dai Xuezhong, and by ADF through Mr. Goldstein. This document demonstrates Mr. Goldstein's management authority because he had the ability to legally bind ADF to business contracts. See Witcher, 62 F.R.D. at 710. As the designated person to sign business contracts, Mr. Goldstein would certainly be one who has control of some department of ADF's business. See Royal Furniture Co. v. Wichita Wholesale Furniture Co., 180 N.C. 531, 533, 105 S.E. 176, 177 (1920). His responsibilities would make him a person "whose position, rank, and duties make it reasonably

12

certain that the corporation [would] be appraised of the service made." Id., see also Orefice v. Laurelview Convalescent Ctr., Inc., 66 F.R.D. 136 (E.D. Pa. 1975) ("It is quite reasonable to believe that an individual who may sign checks for a corporation, and supervises its ledgers, accounts, minute books, and the payment of its bills, will inform the corporation that it has been sued.").

Second, Amended Defendants alleged that in late April 2007, Mr. Li returned to the United States from China and was given a copy of the summons and amended complaint by Mr. Goldstein. This allegation supports a finding that not only is Mr. Goldstein a managing agent, but also that he did in fact deliver the amended complaint to Mr. Li in accordance with the responsibilities of a managing agent.

Third, because of the discrepancies in the affidavits filed in this matter, this court held a hearing and required Mr. Li to be present. The hearing took place on December 21, 2007, and Harvey Poe, David Li, and Jack Cobb were all in attendance. Mr. Poe advised the court, among other things, that if process is served at the Fifth Avenue address, he communicates with Mr. Goldstein about those matters. Furthermore, Mr. Poe and Mr. Li advised the court that although there are ten other employees who work at the Fifth Avenue address for ADF and/or HFI, those employees are all designers. There are no other officers or

13

managers in that office besides Mr. Li and Mr. Goldstein.[11]  When

Mr. Li is not in that office, Mr. Goldstein is apparently in

charge of the office of David Li, ADF, and HFI.

Accordingly, this court finds that Mr. Goldstein was and is

a managing agent who had authority to act on behalf of ADF and

HFI, and that Plaintiff properly perfected service of process

upon ADF and HFI by delivering a copy of the summons and amended

complaint to Mr. Goldstein.

### B. Motion to Set Aside Default

ADF and HFI claim that setting aside the entry of default is

proper because their failure to respond to Plaintiff's complaint

resulted from Mr. Li's absence from the office and confusion as

to where he needed to file an answer.  Plaintiff contends that

the entry of default should not be set aside because ADF and HFI

failed to offer a satisfactory explanation for their failure to

timely respond.  The issue before the court, therefore, is

whether Amended Defendants' delay in responding to Plaintiff's

amended complaint was excusable under the circumstances.

Amended Defendants requested this court to set aside its

previous entry of default according to Rule 60 of the Federal

Rules of Civil Procedure.  Rule 60, however, is reserved for

situations in which a court has entered a default judgment.

---

[11] The information that David Li was usually in the office
on Mondays and Tuesdays was not contested by Defendants.  <u>See</u>
Pl.'s Resp. Mot. Set Aside Entry Default Ex. B.

14

Instead, Rule 55 provides the proper means for setting aside an entry of default. Though the test under Rule 55 is the same as that used under Rule 60, courts apply the test more liberally in a Rule 55 analysis. See United States v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir. 1989); Hill v. Belk Stores Servs., 2007 U.S. Dist. LEXIS 29090 (W.D.N.C. 2007).

Under Rule 55(c) of the Federal Rules of Civil Procedure, a court may "for good cause shown," set aside an entry of default. Fed. R. Civ. P. 55(c). In order to demonstrate good cause, the moving party has the burden of showing that: (1) the motion was made in a timely fashion, (2) the moving party has a meritorious defense, and (3) the opposing party will not be prejudiced by setting aside the default. Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967); see also Payne v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006) (citations omitted); Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). The determination of whether a party has demonstrated "good cause" is "largely within the discretion of the trial judge . . . ." Consolidated Masonry & Fireproofing, 383 F.2d at 251 (citations omitted). In this case, Amended Defendants timely filed their motion to set aside the entry of default, as that motion was filed within 11 days of the court's entry of default. As such, the court will address only the meritorious defense and prejudice prongs of the Rule 55 analysis.

15

Amended Defendants failed to identify or address any meritorious substantive defense in their written motion. A meritorious defense requires "a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812, (4th Cir. 1988). Nevertheless, Defendants' counsel noted during the November 20, 2007, hearing that many of the defenses asserted by AFM against Plaintiff are also applicable to ADF and HFI. In accordance with a "preference for a trial on the merits," Augusta Fiberglass, 843 F.2d at 808, this court takes notice of the defenses alleged by AFM which would also apply to ADF and HFI. Those defenses include, inter alia, that Plaintiff does not own or have valid copyright registrations for the work in issue and that the disputed fabric pattern lacks originality and cannot be copyrighted. The court notes that extending the meritorious defenses of Defendant AFM to ADF in this case is not a precedent to be followed regularly, as it tends to excuse poorly prepared motions.

Plaintiff presented no evidence of substantial prejudice if the entry of default is set aside. Plaintiff argued that it would suffer prejudice by having to proceed to trial against ADF should the court set aside the entry of default in view of the remaining short discovery period. Plaintiff, however,

16

acknowledged that prejudice was ameliorated by the order
continuing the discovery period. Regardless of the court's
decision, Plaintiff would still be required to proceed to trial
against AFM. Though proceeding against more than one party at
trial might require greater work, the issues overlap
significantly.

Plaintiff suffers no prejudice in terms of a delay in
preparation time. During the motions' hearing, Plaintiff's
counsel candidly acknowledged that the extension of the discovery
period and continuance of the trial date eliminated the prejudice
Plaintiff originally confronted by ADF's delay. The court does
recognize Plaintiff's concern that Amended Defendants will not
cooperate in discovery if the default is set aside. This
concern, however, is adequately quelled by the Federal Rules of
Civil Procedure, which provide remedies for any failure to comply
with discovery. Accordingly, this court finds that Plaintiff has
not demonstrated substantial prejudice.

Plaintiff has suffered some prejudice, however. <u>See</u>
<u>Kajitani v. Downey Sav. & Loan Ass'n</u>, 2007 U.S. Dist. LEXIS 79109
(D. Haw. 2007) (citing <u>Nilsson, Robbins, Dalgarn, Berliner,</u>
<u>Carson & Wurst v. Louisiana Hydrolec</u>, 854 F.2d 1538, 1546 (9th
Cir. 1988)) ("The most common type of prejudice suffered by the
non-defaulting party is the additional expense incurred because
of 'the delay, the hearing on the Rule 55(c) motion, and the

17

introduction of new issues.'"). Accordingly, the court will
order ADF, as a condition for setting aside the entry of default,
to pay the reasonable attorneys' fees Plaintiff incurred while
responding to ADF's motion to set aside the entry of default.
See id. ("The requirement that the defaulting party pay court
costs can ameliorate these burdens and such a sanction can serve
to promote the positive purposes of the default procedures
without subjecting either litigant to their drastic
consequences.") (citation and internal quotations omitted); Dunn
v. Burch, 2006 U.S. Dist. LEXIS 81193 (W.D.N.C. 2006) ("[I]t has
long been recognized that courts possess the 'inherent power' to
impose reasonable conditions on relief from a default . . .
[which] includes the authority to condition relief from default
on payment of the opposing party's attorneys' fees and costs
incurred in securing the entry of a default.") (citation
omitted). Accordingly, as a condition of setting aside the entry
of default, Defendant ADF will be required to pay the reasonable
attorneys' fees of Plaintiff. The court will reserve ruling on
HFI's motion to set aside the entry of default until it can
determine whether it may exercise personal jurisdiction over HFI.

**C. Attorneys' Fees**

This court advised the parties of its intention to award
Plaintiff a reasonable amount of attorneys' fees as a condition
of setting aside the entry of default. The court required

18

Plaintiff to provide an itemized account of the attorneys' fees incurred in the litigation. Objections and responses were filed by both parties. In total, Plaintiff requests an attorneys' fee award of $36,033.50. ADF contends such an award is not merited.

Under Fourth Circuit precedent, a district court is required to consider several factors when evaluating the reasonableness of an attorneys' fee award. See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978); Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 189 (4th Cir. 2007). The factors set forth in Barber include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the services rendered; (4) the opportunity costs of accepting the case; (5) the customary fee for similar work; (6) the professional's expectations at the outset of the employment; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the professional; (10) the undesirability of the case; (11) the nature and length of the professional relationship; and (12) fee awards in similar cases. Barber, 577 F.2d at 226 n.28. The starting point for establishing the proper amount of a fee award is the number of hours reasonably expended multiplied by a reasonable hourly rate. Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994).

19

This court has considered the above factors. The rates
charged by Plaintiff's counsel are reasonable in light of
counsels' experience and the complexity of the legal questions
that evolved. Reviewing the affidavits and building a case
against an unresponsive party required significant investigation.
Also, responding to and filtering through conflicting
representations made by ADF in support of its motion to set aside
the default involved additional substantial effort on behalf of
Plaintiff's counsel. This court has reviewed the billing
statements submitted by Plaintiff's counsel and reduced the
requested award to reflect solely those fees that were occasioned
by the additional work necessary to respond to the motions to set
aside the default and the investigation, responses, and hearings
required to resolve a number of issues raised by ADF's default
pleadings. Based on all of the foregoing, this court finds that
an award of attorneys' fees in the amount of $21,000.00 is a
reasonable award.

**D. Motion to Dismiss Pursuant to Rule 12(b)(2)**

ADF and HFI filed a motion to dismiss this action, arguing
that this court lacks personal jurisdiction over both companies.
Plaintiff contends that both companies have purposefully availed
themselves of the rights and privileges of conducting business in
the state. During the November 20, 2007, hearing, counsel for
ADF conceded the issue of personal jurisdiction with respect to

20

ADF on account of the numerous contacts that ADF had with the state of North Carolina.[12]  Counsel for HFI, however, did not concede that the court has personal jurisdiction over HFI.  In response, Plaintiff claimed that HFI waived any personal jurisdiction defense when it failed to assert the defense in its first responsive pleading.  This court, however, found it necessary to allow for a brief discovery period in order to ascertain whether the court may exercise personal jurisdiction over HFI.  Therefore, the court will rule on this motion after discovery is completed.

Amended Defendants seek to dismiss this case on the basis of improper venue.  They argue that the requirements under 28 U.S.C. § 1391(a) have not been met.  This argument is without merit, however, because jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338, as this action is based on a federal question of copyright infringement, not diversity of citizenship.

Accordingly, it is ORDERED that Defendants ADF's and HFI's motion to dismiss for improper venue (Doc. No. 61) is DENIED.

It is further ORDERED that Defendant ADF's motion to dismiss for lack of personal jurisdiction (Doc. No. 61) is DENIED.

---

[12] These contacts include:  twenty percent of ADF's total sales in 2006 occurred in North Carolina, ADF formerly maintained warehouses in North Carolina, and ADF was a party in two suits in a federal district court in North Carolina.

The entry of default as to ADF is hereby set aside on the terms and conditions described herein and specifically set forth in this court's orders of December 31, 2007 and March 7, 2008.

As stated in this court's December 31, 2007, order, the court reserves ruling on HFI's motion to dismiss for lack of personal jurisdiction and motion to set aside the entry of default until completion of the sixty-day discovery period, which commenced March 7, 2008.

This the 1st day of April 2008.

_____
United States District Judge
